# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

THOMAS PUGH,                          )
                                      )
                     Plaintiff,       )
                                      )
          vs.                         )          Civil Action No. 3:26-cv-00119
                                      )          Judge D. Brooks Smith
                                      )          Sitting by Designation
                                      )
CAMBRIA COUNTY CHILDREN AND           )
YOUTH SERVICES, and CHERYL            )
BENNETT,                              )
                                      )
                     Defendants.      )

## MEMORANDUM and ORDER OF COURT

SMITH, Circuit Judge,[1]

Plaintiff Thomas Pugh, proceeding *pro se*, initiated this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Cambria County Children and Youth Services ("CYS") and Cheryl Bennett, a caseworker with CYS, arising out of a child-welfare investigation. He alleges that Bennett singled him out for investigation because of personal bias and his status as a registered sex offender and that she failed to adequately explain the basis for, or nature of, the investigation. Presently before the Court is Defendants' Motion to Dismiss pursuant to Federal

---

[1] By order dated December 19, 2025, the Honorable Michael A. Chagares, *Chief Judge* of the U.S. Court of Appeals for the Third Circuit, designated and assigned Circuit Judge D. Brooks Smith, pursuant to 28 U.S.C. § 291(b), to hold court in the Western District of Pennsylvania.

1

Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Motion will be granted, and the claims against Defendants will therefore be dismissed.

## I.    Background

In 1996, Pugh was convicted in New York of two counts of first-degree rape, *see* N.Y. Penal L. § 130.35, and one count of first-degree sodomy, *see id.* § 130.50.[2] He now resides in Pennsylvania. ECF 1 ("Compl."), at 1.[3] Because of those convictions, Pugh must maintain a lifetime sex-offender registration with the Pennsylvania State Police under both federal and Pennsylvania "Megan's Law."[4] *See* 34 U.S.C. § 20911–20915; 42 Pa. C. S. § 9799.55.

---

[2]    *See    Thomas    Pugh    Jr.,*    PA    MEGAN'S    LAW, https://www.meganslaw.psp.pa.gov/OffenderDetails/Offenses/46073 [https://perma.cc/3NA5-XA8E] (last visited Mar. 13, 2026); *Sex Offender Registry,* N.Y.    STATE    DIV.    OF    CRIM.    JUST.    SERVS., https://www.criminaljustice.ny.gov/SomsSUBDirectory/offenderDetails.jsp?offend erid=32573&lang=EN [https://perma.cc/2JT8-Y83C] (last visited Mar. 13, 2026). The Complaint refers to Pugh's "underlying offense," but provides no details. In resolving a motion to dismiss, I generally may not consider matters extraneous to the pleadings. I may, however, properly consider "matters of public record." *Handal v. Innovative Indus. Props., Inc.,* 157 F.4th 279, 292 (3d Cir. 2025) (citation omitted).
[3] The Complaint does not fully comply with Federal Rule of Civil Procedure 10(b), which requires parties to state their claims in numbered paragraphs. *See* Fed. R. Civ. P. 10(b). That defect makes precise citation difficult. I therefore cite the Complaint by page number.
[4] "Megan Kanka was a 7–year–old New Jersey girl who was sexually assaulted and murdered in 1994 by a neighbor who, unknown to the victim's family, had prior convictions for sex offenses against children. The crime gave impetus to laws for mandatory registration of sex offenders and corresponding community notification." *Smith v. Doe,* 538 U.S. 84, 89 (2003). "By 1996, every State, the District of

According to the Complaint, on January 15, 2026, Bennett went to Pugh's residence[5] to investigate an alleged "risk to children." Compl. at 2. Pugh alleges that Bennett refused to disclose the nature of the allegation and instead questioned him about his Megan's Law registration, stating that his registration was "outdated." *Id*. Shortly afterward, CYS closed its investigation into Pugh without opening a formal case or taking any adverse action. ECF 8–2.[6] Even so, based on that encounter, Pugh alleges that he suffered "emotional distress, reputational harm, and fear of unjustified state interference with his family." Compl. at 2.[7]

---

Columbia, and the Federal Government had enacted some variation of Megan's Law." *Id*., at 90

[5] Defendants contend that Pugh was not interviewed at his residence, but rather at a nearby restaurant. ECF 6 at ¶8 n.3. Because this matter is before me on a motion to dismiss, I must accept Pugh's allegation as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[6] Both parties attach to their briefing a letter from CYS to Pugh stating that "after investigating the concerns that were reported to [CYS] . . . further investigation is not necessary and a case will not be opened." *Id*. I may properly consider this letter in ruling on the motion to dismiss. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (courts may consider an "undisputedly authentic document that a defendant attaches as an exhibit . . . if the plaintiff's claims are based on the document"). Oddly, Bennett's letter is dated February 7, 2026 while Pugh's letter is dated January 28, 2026, although the contents of the letter are identical. *Compare* ECF 6-4 *with* ECF 8-2. However, because the contents of the letter are not in dispute, "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[7] In his Opposition to Defendants' Motion to Dismiss, Pugh adds an allegation that Bennett "coerced [him] into allowing a home inspection by falsely stating that he 'could not refuse.'" ECF 8 at 1. However, it is axiomatic that a "complaint may not be amended by the briefs in opposition to a motion to dismiss." *Gov't Emps. Ins. Co.*

Pugh asserts four claims under the Fourteenth Amendment and seeks over $1 million in damages.[8] He alleges that Bennett (1) violated his procedural due process rights by refusing to identify the allegation or explain how his registration status created a risk to children, thereby depriving him of a meaningful opportunity to understand and respond to the investigation; (2) violated his substantive due process rights by interfering with his "fundamental right to family integrity without legitimate justification"; (3) discriminated against him on the basis of his status as a Megan's Law registrant, in violation of the Equal Protection Clause; and (4) used her state authority to retaliate against him because he had previously prevailed in a civil case against an unidentified individual with whom Bennett allegedly has a personal relationship. Compl. at 2–3.

Defendants moved to dismiss the Complaint under Rule 12(b)(6) and filed a brief in support. ECF 6, 7. Pugh filed an opposition. ECF 8. The motion is now ripe for disposition.

---

*v. Mount Prospect Chiropractic Ctr., P.A.,* 98 F.4th 463, 472 (3d Cir. 2024) (citation omitted). I therefore do not consider that allegation.

[8] Pugh specifies that he is seeking $500,000 in compensatory damages, $500,000 in "emotional distress damages," and $250,000 in punitive damages. Compl. at 3. Such specification of unliquidated damages is improper pursuant to this Court's local rules. *See* W.D. Pa. LCvR 8 (stating that "[n]o party shall set forth in a pleading originally filed with this Court a specific dollar amount of unliquidated damages in a pleading except as may be necessary to invoke the diversity jurisdiction of the Court . . .").

## II.    Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In resolving such a motion, a district court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *See Fowler,* 578 F.3d at 210. Indeed, a district court must do so "even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." *Id.* at 213 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). However, it need not accept as true "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted); *see also Pa. Prison Soc'y v. Cortes*, 622 F.3d 215, 233 (3d Cir. 2010) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. That standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A plaintiff must plead

sufficient factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Generally, a district court must afford a plaintiff proceeding *pro se* some "procedural flexibility" when reviewing and interpreting his pleadings. *Mala v. Crown Bay Marina, Inc.,* 704 F.3d 239, 245 (3d Cir. 2013). I must, therefore, "liberally construe" Pugh's pleadings. *Higgs v. Att'y Gen.,* 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."). Nonetheless, even though he is proceeding *pro se*, Pugh "still must allege sufficient facts in [his] complaint[] to support a claim," and I may not conjure up or supply missing factual allegations if he fails to adequately do so. *Mala,* 704 F.3d at 245; *see also Pliler v. Ford,* 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants.").

## III.    Analysis

To state a claim under 42 U.S.C. § 1983, a plaintiff is required to allege the following: first, the deprivation of a right secured by the Constitution or federal law; and second, that the deprivation was caused by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

Here, there is no dispute that Bennett was acting under color of state law when she interviewed Pugh in the course of her work as a state employee.[9] The question thus is whether Pugh has plausibly alleged the deprivation of a constitutional right. He asserts four theories: procedural due process, substantive due process, equal protection, and retaliation. I address each in turn.

### A. Due Process

Pugh alleges that Defendants violated his substantive and procedural due process rights by initiating an investigation without legitimate justification, without prior notice, and without disclosing the allegations against him. Compl. at 2–3. To state a procedural due process claim, Pugh must allege that he was (1) "deprived [] of an individual liberty interest that is encompassed within the Fourteenth Amendment's protection, and (2) the procedures [] made available to him did not provide due process of law." *Steele v. Cicchi,* 855 F.3d 494, 507 (3d Cir. 2017). To state a substantive due process claim, he must allege: "1) an actor engaged in conduct under color of state law; 2) a deprivation of [his] protected liberty interest by that conduct; and 3) the deprivation shocks the conscience." *Ashton v. City of Uniontown,*

---

[9] *See West*, 487 U.S. at 49 ("[A]cting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." (internal quotations marks and citation omitted)).

459 F. App'x 185, 189 (3d Cir. 2012) (citing *Chainey v. Street,* 523 F.3d 200, 219 (3d Cir. 2008)).

Here, both of Pugh's due process claims fail for the straightforward reason that he has not plausibly alleged that Defendants deprived him of any protected liberty interest. Pugh asserts that Defendants infringed his "liberty interests in family integrity, reputation, and freedom from arbitrary state intrusion." Compl. at 3. But the facts he pleads do not rise to the level of a deprivation of any of those interests.

Pugh plainly has a liberty interest in the integrity of his family.[10] But nothing in the Complaint suggests that Defendants deprived him of that interest. To the contrary, Defendants' brief investigation was closed without any formal action. ECF 8-2. Defendants did not physically remove his children, coercively separate him from his family, or otherwise interfere with his parental relationship in any comparable way.[11] Absent any such interference, Pugh has not shown a deprivation of his liberty interest in family integrity.

---

[10] "The Due Process Clause of the Fourteenth Amendment prohibits the government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process." *Croft v. Westmoreland Cnty. Child. & Youth Servs.,* 103 F.3d 1123, 1125 (3d Cir. 1997); *see also Troxel v. Granville,* 530 U.S. 57, 65 (2000) (stating that a parent's liberty interest in the "care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court").

[11] *Cf., B.S. v. Somerset Cnty.,* 704 F.3d 250, 271 (3d Cir. 2013) (mother's liberty interest was implicated where her child was removed from her custody and transferred to child's father); *Croft,* 103 F.3d at 1125 n.1, 1127 (child services caseworker interfered with a father's constitutional right to family integrity where

His reputational theory fares no better. Although an individual in some sense "has a protectable interest in reputation," it is well accepted that "reputation *alone* is not an interest protected by the Due Process Clause." *Hill v. Borough of Kutztown*, 455 F.3d 225, 235–36 (3d Cir. 2006) (citations omitted); *see also Conn. Dep't of Pub. Safety v. Doe,* 538 U.S. 1, 6–7 (2003) ("[M]ere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest."). Instead, a plaintiff must satisfy the familiar "stigma-plus" test by showing "a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill,* 455 F.3d at 236 (citing *Paul v. Davis,* 424 U.S. 693, 701 (1976)). Even assuming Pugh could satisfy the stigma prong,[12] he does not plausibly allege the required "plus." He does not allege that the investigation altered his legal status, affected his custody rights, resulted in prosecution, or caused any other comparable deprivation.[13] The investigation, standing alone, will not suffice.

_____

caseworker "blatantly coerc[ed]" father to leave his home and have no contact with his daughter by threatening to remove the daughter and place her in foster care if he failed to comply); *Miller v. City of Philadelphia,* 174 F.3d 368, 371 (3d Cir. 1999) (defendants interfered with mother's liberty interest by removing two of her children from her custody).

[12] To satisfy the stigma prong, Pugh must allege that Defendants publicly disseminated stigmatizing statements about him and that those statements were false. *Id*. He alleges neither.

[13] To be sure, courts have found the "plus" satisfied where a plaintiff was wrongly classified as a sex offender and that classification carried some additional legal consequence. *See, e.g., Vega v. Lantz,* 596 F.3d 77, 82 (2d Cir. 2010); *Kirby v. Siegelman,* 195 F.3d 1285, 1292 (11th Cir. 1999); *Neal v. Shimoda,* 131 F.3d 818, 829 (9th Cir. 1997). But that is not this case. Pugh was already subject to sex-

9

Nor does Pugh's asserted interest in "freedom from arbitrary state intrusion" carry the day. Stated at that level of generality, the asserted interest is too amorphous to qualify as a cognizable liberty interest. The Supreme Court has cautioned that "conferring constitutional status upon a previously unrecognized 'liberty' . . . require[s] 'a careful description of the asserted fundamental liberty interest.'" *Kerry v. Din*, 576 U.S. 86, 93 (2015) (Scalia, J. plurality opinion) (quoting *Washington v. Glucksberg,* 521 U.S. 702, 721 (1997)). In *Kerry*, the plurality rejected, among other things, a claimed "liberty interest of a U.S. citizen . . . to be free from arbitrary restrictions on his right to live with his spouse." *Id.* Other district courts have likewise rejected similarly generalized formulations. *See, e.g., Olesen v. Morgan,* 2009 WL 2045682, at *6 (N.D.N.Y. July 8, 2009) (rejecting an asserted interest in "the right to conduct [one's] business free from harassment"); *Teran v. Hagopian,* 2009 WL 900743, at *6 (E.D. Cal. Mar. 31, 2009) (rejecting a claimed "liberty interest to be free from harassment and intimidation"). The facts alleged here lead me to the same result. A generalized interest in being left alone by government investigators is not the kind of discrete liberty interest due process protects.

---

offender registration by virtue of his prior convictions. Bennett's interview did not further alter his legal status or impose any additional state-created burden.

Pugh, then, has not plausibly alleged that Defendants deprived him of any protected liberty interest. That failure defeats both his procedural and substantive due process theories. *See Kerry,* 576 U.S. at 90 (stating that "*no* process is due if one is not deprived of 'life, liberty, or property'"); *Nicholas v. Pa. State Univ.,* 227 F.3d 133, 139–40 (3d Cir. 2000) (explaining that, to sustain a substantive due process claim, "a plaintiff must establish as a threshold matter that he has a protected [] interest to which the Fourteenth Amendment's due process protection applies." (citation omitted)). I therefore will dismiss Pugh's due process claims.

### B. Equal Protection

Pugh next alleges that Defendants violated his equal protection rights by singling him out "solely because of his Megan's Law status" even though, in his view, there is "no connection between [his] underlying offense and children." Compl. at 3. At its core, "the Equal Protection Clause requires equal treatment of all persons similarly situated." *Stradford v. Sec'y Pa. Dep't of Corr.,* 53 F.4th 67, 73 (3d Cir. 2022).

Equal protection claims generally proceed in one of two ways. First, a plaintiff may allege that the government treated him differently because of his or her membership in a particular class or group. *See Renchenski v. Williams,* 622 F.3d 315, 337 (3d Cir. 2010). In that circumstance, a plaintiff must show, not only that they have been treated differently from other similarly situated non-members, but that

11

"the Government's explanation for the differing treatment does not satisfy the relevant level of scrutiny." Stradford, 53 F.4th at 73 (citation omitted). If the challenged action targets a suspect class, such as race, alienage, or national origin, courts apply strict scrutiny. See Renchenski, 622 F.3d at 337. If, however, the state action does not target a suspect class, it "must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis" for the different treatment. Id. (citation omitted). Second, a plaintiff may proceed under a "class of one" theory, which applies "where the plaintiff [does] not allege membership in a class or group." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). To state such a claim, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill, 455 F.3d at 239.

Under the first theory, Pugh's claim fails at the threshold because he does not identify any similarly situated non-members, that is, any non-Megan's Law registrants who were treated differently. More specifically, he does not identify any similarly situated individual who was not subject to investigation despite comparable allegations of child endangerment. That omission is fatal to Pugh's claim. See Stradford, 53 F.4th at 74 ("[T]he failure to identify similarly situated persons dooms an equal-protection claim.").

Yet even if he could identify such individuals, his claim would still fail. "[S]ex offenders do not belong to a suspect or quasi-suspect class." *Id.* at 74 n.3. So rational-basis review applies. Under that standard, the challenged distinction survives so long as there is a "rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* at 77. Protecting vulnerable individuals, especially children, from abuse and sexual exploitation is plainly a legitimate state interest. *Artway v. Att'y Gen. of State of N.J.,* 81 F.3d 1235, 1267 (3d Cir. 1996). And it is rationally related to that interest for the State to treat sex offenders as posing greater risks to children than the public at large, even when a particular offender's underlying offense did not involve a child victim.[14] *See, e.g., Doe v. Miller,* 405 F.3d 700, 716 (8th Cir. 2005) (upholding restrictions on residing near schools for sex offenders even without an individualized showing that the particular offender had previously victimized children).

Nor can Pugh maintain an equal protection claim based on the "class of one" theory. Again, he identifies no similarly situated individuals who were treated differently. In this setting, that would mean at least some other Megan's Law

---

[14] Indeed, "a community can rationally fear sex offenders *more than other criminals* because sex offenders target vulnerable individuals" and "typically have a higher risk of recidivism." *Stradford,* 53 F.4th at 77–78 (emphasis added) (internal quotation marks and citations omitted).

13

registrant who was not investigated under comparable circumstances.[15] Pugh alleges none and therefore his claim cannot proceed. *See Hill,* 455 F.3d at 239 (dismissing a "class of one" claim because the plaintiff "d[id] not allege the existence of similarly situated individuals . . . who [defendant] treated differently"). Accordingly, Pugh fails to state an equal protection claim under either theory, and I will dismiss that claim.

### C. Retaliation

Pugh's final theory sounds in retaliation. He alleges that Bennett initiated the investigation because he previously prevailed in a civil case against an unnamed individual with whom Bennett allegedly has a personal relationship. Compl. at 3.

---

[15] "Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects" other than the asserted basis for differential treatment. *Startzell v. City of Philadelphia,* 533 F.3d 183, 203 (3d Cir. 2008) (internal quotation marks and citation omitted); *see also Frompovicz v. Hissner,* 843 F. App'x 427, 430 (3d Cir. 2021) (applying *Startzell* in the "class of one" context). Thus, in a class-based claim, the proper comparators are persons "alike in all relevant respects" except for membership in the class at issue. In a "class of one" claim, by contrast, the proper comparators must match the plaintiff in all material respects relevant to the challenged decision—including any membership in a class that bears on that decision—so that the only remaining distinction is the differential treatment directed at the plaintiff as an individual. *See, e.g., Gianfrancesco v. Town of Wrentham,* 712 F.3d 634, 640 (1st Cir. 2013) ("[A] class-of-one plaintiff bears the burden of showing that his comparators are similarly situated in all respects relevant to the challenged government action."); *Clubside, Inc. v. Valentin,* 468 F.3d 144, 159 (2d Cir. 2006) ("[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.").

As pleaded, Pugh's claim is not properly grounded in the Fourteenth Amendment. Retaliation under § 1983 is not a standalone claim but rather must be anchored to the plaintiff's exercise of a specific constitutional right. *See Mirabella v. Villard,* 853 F.3d 641, 649 (3d Cir. 2017) (explaining that, to plead a retaliation claim, a plaintiff must allege, *inter alia,* "constitutionally protected conduct"). To the extent Pugh means to allege that Bennett retaliated against him for prior litigation, that theory sounds in the First Amendment. *See id.,* at 650–52 (analyzing alleged retaliation for threatened litigation under the First Amendment); *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 266 (3d Cir. 2007) (analyzing alleged retaliation for pursuing administrative relief under the First Amendment). Mindful of my obligation to construe Pugh's complaint "liberally," I will construe his claim that way. *Higgs,* 655 F.3d at 339.

To state a First Amendment retaliation claim, Pugh must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Mirabella,* 853 F.3d at 649. As to the first element, filing suit to vindicate one's rights is protected by the First Amendment. *See Anderson v. Davila,* 125 F.3d 148, 161 (3d Cir. 1997) ("[A]n individual's constitutional right of access to court is protected by the First Amendment's clause granting the right to petition the government for

15

grievances."). But Pugh alleges no facts about the prior litigation beyond a passing reference to it. He does not identify the defendant, describe the subject of the suit, state when it was filed, or plead any other facts demonstrating the existence of the alleged litigation. For the same reason, he does not plausibly allege a causal link between the prior litigation and Bennett's investigation.

More fundamentally, however, Pugh's claim fails on the second element: whether Bennett took sufficient retaliatory action. The alleged retaliatory act—a brief investigation that was closed without consequence—is not the sort of action that would "deter a person of ordinary firmness from exercising his constitutional rights," *Mirabella,* 853 F.3d at 649. *See Fraternal Ord. of Police, Lodge 1 v. City of Camden,* 842 F.3d 231, 246 (3d Cir. 2016) (holding, in the FMLA context, that an employer visiting and questioning an employee on protected FMLA leave was "minimally intrusive" and not "sufficient to deter a person of ordinary firmness" from exercising his or her rights); *McKee v. Hart,* 436 F.3d 165, 170 (3d Cir. 2006) (holding that "criticism, false accusations, or verbal reprimands" are insufficient to deter a person of ordinary firmness). If Bennett's intent was to punish Pugh or scare

him off from future litigation, the effort was, to put it mildly, underwhelming. Pugh

therefore fails to state a retaliation claim,[16] and I will dismiss that claim.[17]

Accordingly, the following order is entered:

## ORDER

AND NOW, this 8th of April, 2026, for the reasons set forth herein, IT IS

ORDERED that Defendants' Motion to Dismiss (ECF 6) is GRANTED, and the

Complaint (ECF 1) is DISMISSED without prejudice. Pugh may file an amended

---

[16] Because I conclude that Pugh has not plausibly alleged a violation of his constitutional rights, I need not reach whether Bennett is entitled to qualified immunity. *See Miller*, 174 F.3d at 374 (stating that "[t]he proper approach" when a qualified immunity defense is raised "is to ascertain whether a constitutional violation has been alleged *before* determining if qualified immunity is available").

[17] I will dismiss Pugh's claims without prejudice and grant leave to amend. Ultimately, the decision whether to permit amendment rests "within the discretion of the District Court." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). However, "[i]n pro se civil rights actions, 'district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.'" *Coleman v. Acad. Bus. LLC*, 858 F. App'x 584, 585 (3d Cir. 2021) (quoting *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007)). Here, although Pugh's claims suffer from myriad deficiencies, I cannot say amendment would necessarily be futile in the same way it would be where claims are barred by immunity, *see, e.g., Kuku v. Bohler*, 2024 WL 4867012, at *3 (D.N.J. Nov. 22, 2024), or preclusion, *see, e.g., Shah v. United States*, 540 F. App'x 91, 95 (3d Cir. 2013). Pugh is advised, however, that if he elects to amend and fails to cure the deficiencies identified in this Opinion, his claims may be dismissed with prejudice. *See Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) (explaining that "[a] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them").

complaint which must cure the defects identified in this Opinion. If Pugh chooses to file an amended complaint, it must be filed on or before May 8, 2026. Failure to do so may result in dismissal with prejudice.

IT IS FURTHER ORDERED that Pugh shall effectuate service of the amended complaint, if any, and all service documents on Defendants on or before May 8, 2026. Failure to do so may result in dismissal with prejudice.

_____/s/D. Brooks Smith_____

D. Brooks Smith
United States Circuit Judge
Sitting by Designation
